## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Zuleica Mancilla (hereinafter, "Mancilla") and Wireless Time Georgia LLC ("Company") (Mancilla and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 20th day of February, 2018 ("Effective Date"), as follows:

### RECITALS

**WHEREAS**, Mancilla filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 17-cv-03143-MLB ("Complaint"), in which she alleged that the Company violated the Fair Labor Standards Act ("FLSA") by failing to pay her wages and overtime for hours he worked for the Company (the "Wage Claim"). Mancilla also alleged that she was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim");

**WHEREAS**, the Company denies the allegations asserted by Mancilla as set forth in the Complaint. The Company believes that Mancilla was properly compensated under the FLSA and, therefore, that Mancilla is not entitled to overtime pay. The Company believes that it acted in good faith and, therefore, that Mancilla is not entitled to liquidated damages;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

**1.     Settlement Amount for FLSA Claim**. As consideration for Mancilla's release of her Wage Claim and Liquidated Damages Claim, the Company will pay Mancilla and her attorneys the gross sum of $4,500 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Mancilla's Wage Claim, Liquidated Damages Claim, and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a.   The Company will pay Mancilla the gross amount of $1,000 as full compensation for Mancilla's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Mancilla.

b.   The Company will pay Mancilla the gross amount of $1,000 as full compensation for Mancilla's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Mancilla.

      c.      The Company will pay the Vaughn Law Firm, LLC the gross amount of $2,500 for attorneys' fees.  No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Mancilla's claims under the FLSA as alleged in the Complaint.  Section 1(a) FLSA Settlement Amount shall be due and payable to Mancilla.  Sections 1(b), and 1(c) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC attorney trust account.  Mancilla and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint.

      **2.**      **Release of Claims under the FLSA by Mancilla.**  In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Mancilla releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including but not limited to, the Overtime Claim and the Liquidated Damages Claim.

      **3.**      **Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Mancilla's general release of claims against the Company in Section 6 of this Agreement and for the limited Confidentiality of this Agreement in Section 9, the Company will pay Mancilla the gross sum of $500 (the "General Release Settlement Amount").  No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Mancilla.

The consideration set forth above is in full and complete settlement of Mancilla's general release of claims against the Company and limited confidentiality terms.  The General Release Settlement Amount shall be due and payable to Mancilla in accordance with Section 4 of this Agreement.

      **4.**      **Payment Schedule.** The FLSA Settlement Amount and the General Release Settlement Amount will be paid within five (5) work days of Court's approval of this Agreement.

      **5.**      **Tax Liability.**   In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments.  Mancilla understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Mancilla agrees to bear all tax consequences, if any, attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount.  Mancilla further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Mancilla by letter sent to counsel for Mancilla.

**6.     General Release by Mancilla.**  In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Mancilla (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Mancilla executes this Agreement.  Without limiting the foregoing general release, Mancilla understands that this general release applies, but is not limited, to: all claims arising out of Mancilla's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq*.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq*.; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq*.; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq*.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq*.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq*.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq*.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq*. (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Mancilla further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Mancilla further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**7.     General Release by Company.**  In consideration of the releases, promises and covenants provided for herein, the Company (for itself, its agents, assigns, successors, heirs, executors, and administrators) releases and discharges Mancilla from any and all charges,

complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Mancilla executes this Agreement, including but not limited those growing out of, resulting from, or connected in any way to Mancilla's relationship and/or employment, and the termination thereof, with Company. Without limiting the foregoing general release, this includes, but is not limited to, all claims based on constitutional, statutory, common law, or regulatory grounds, including but not limited to conversion, intentional infliction of emotional distress, negligence, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, fraud, misrepresentation, or promissory estoppel. This includes all claims for any relief, no matter how denominated, including, but not limited to compensatory damages, punitive damages, and attorneys' fees and costs.

**8.    Non-disparagement.**  Each Party agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. Nothing in this Section shall apply to a Party making any oral or written statement related to any claims under the FLSA, the claims set forth in the Complaint, or FLSA Settlement Amount. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Mancilla, the Company will respond by only providing the dates Mancilla was contracted with the Company, last position held and rate of compensation.

**9**.    **Limited Confidentiality.**  Except for the claims related to the FLSA, Mancilla agrees and promises that unless required by law to do so, she will not disclose the terms of this Agreement or information about her involvement with Company, or make any oral or written statements or reveal any information to any person, company, agency or other entity. Notwithstanding the foregoing, nothing in this Section shall restrict Mancilla from discussing the terms of her employment with the Company with a potential employer. Except for the claims related to the FLSA, each Party agrees that it will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."

**10.   Representations, Warranties and Affirmations.**  Mancilla represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Mancilla represents, affirms and warrants that he has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board. This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement. In addition to all other rights and remedies Company may have at law or in equity, if Mancilla's representation, affirmation, and warranty is false, Mancilla will return to Company all consideration paid pursuant to Section 2 and Section 3 of this Agreement. Mancilla further represents and affirms as a material term of this Agreement that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to him, except as provided for in this Agreement.

**11.     Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by the either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**12.     Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages.  In addition to all other rights and remedies Company may have at law or in equity, if Mancilla files a civil action or regulatory claim against Company alleging any of the claims released herein, Mancilla will return to Company all consideration paid pursuant to Section 2 and Section 3 of this Agreement.  Each Party further understands and acknowledges that the Confidentiality (Section 9), Nondisparagement (Section 8) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement.  Each Party acknowledges and agrees that the nonbreaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, the Parties agree that, if a Party breaches either the provision of this Agreement, the breaching party shall be obligated to pay the nonbreaching party One Thousand Dollars ($1,000.00) for each proven breach as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**13.     Integration**.  This written Agreement contains the entire agreement of the Parties regarding the settlement of Mancilla's claims under the FLSA and the Parties' general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**14.     Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Company pay Blount and her counsel the Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**15.    Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Fulton County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**16.    Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**17.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**18.    Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Blount and her counsel referenced in Section 1.

**19.    Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

**20.    Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**(SIGNATURE PAGE TO FOLLOW)**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

Zulelca Mancilla

Signature: _____

Dated: 05/01/18

Wireless Time Georgia, LLC

Signature: _____

By: _____

Title: _____

Dated: 5-0?-1?